Filed 2/15/24  P. v. Moses CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JENNIFER ANN MOSES,<br><br>    Defendant and Appellant. | G062188<br><br>(Super. Ct. No. 14NF4799)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

Defendant Jennifer Ann Moses pleaded guilty to one count of attempted murder (Pen. Code, §§ 187, subd. (a), 664)[1] and admitted a firearm use allegation (§ 12022.5, subd. (a)). The court sentenced defendant to 13 years in state prison as follows: (1) the upper term of nine years on the attempted murder count; and (2) a consecutive term of four years for the firearm enhancement.

In April 2022, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[2] The court found defendant's petition set forth a prima facie case for relief and issued an order to show cause. After hearing the evidence and argument, the court denied the petition, and defendant appealed. Defendant's appointed counsel advised the court he was unable to find an issue to argue on defendant's behalf and requests that we review the entire record. Defendant was given the opportunity to file written argument on his own behalf, and he has not done so. Although defendant has not filed a supplemental brief, we exercise our discretion to conduct an independent review of the record and appointed counsel's brief. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 232.)

We have examined the entire record and have not found an arguable issue on appeal. Accordingly, we affirm the postjudgment order.

## FACTS

*The Underlying Incident*[3]

In the early morning on October 26, 2014, defendant had a verbal altercation, possibly involving racial slurs, with three males inside of a liquor store.

---

[1] All further statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

[3] We summarize some of the facts from the parties' stipulated factual

Defendant told the police that the males assaulted her at the store, but surveillance video only showed a verbal altercation.

After the interaction, defendant went inside of her vehicle where she had a loaded handgun under the seat. She drove around looking for the three males who she said had attacked her. She eventually spotted a vehicle she believed was driven by the male who had hit her. She lost sight of the vehicle but continued to drive looking for it. She later spotted the males sitting on some steps with their vehicle parked on the street. Defendant shot at the male who she said had hit her. The male then ran off, and the other males ran inside of a building. Eyewitness accounts confirmed the shots were fired from defendant's vehicle in the direction of the male. Defendant told officers she confronted the male about "beating down another black person," and said something to the effect of "I bet you won't beat down another black person" before shooting her gun.

After the shooting, police received several phone calls from callers who described hearing six or seven gunshots, a pause, and two additional gunshots. The callers described the shots as coming from a car and observed a Hispanic male and others running away. They described the shooter as a black female.

When a detective from the police department arrived at the scene, he found a cluster of shell casings where the shooter fired the shots and another shell casing in the street. The detective also observed a bullet strike in the stucco of a building, approximately five feet off the ground, along with bullet damage in a stucco pillar, an iron gate, and on two vehicles parked on the street.

Shortly after the shooting, defendant told her apartment manager that she was attacked by three males at the liquor store. She also told her she found the males, "shot them," and "got them." Defendant told the same story to a neighbor. She explained to the neighbor that three males attacked her at the liquor store, and she was

summary.

3

able to get away. She further told the neighbor she drove around looking for the males and "took care of the problem."

After defendant was arrested, she admitted to police officers that she was the shooter. She explained she had walked to a liquor store near her home and noticed two Hispanic males covered in "possible gang tattoos" standing by a vehicle outside of the store. When she was inside of the store, the males approached her and made racial slurs. Three males also prevented her from leaving the store and a fight ensued, causing her to get hit in the face. Defendant told the police she was able to run away to her vehicle and drove around looking for them. She described how angry she was that they picked on her because of her race and noted they had attacked her for the second time, implying they had done the same thing on a prior occasion. She also told the police she was "only trying to scare" the victims and claimed to have fired "downward." When the police confronted defendant about the recovered rounds that were not low to the ground or consistent with firing "downward," defendant responded she had never fired a gun before and was "very weak." She admitted the shooting was wrong and said she prayed for forgiveness.

While in custody, defendant spoke to a girlfriend who told her not to say anything to detectives. Defendant stated she already told the truth to the police.

*Defendant's Guilty Plea and Petition for Resentencing*

As the factual basis for her guilty plea, defendant stated: "On October 26, 2014, I did willfully[,] unlawfully [and] with specific intent to kill, attempt to kill John Doe, a human being. At the time, I personally used a firearm in the attempted commission of this felony."

In her petition for resentencing, defendant averred: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences

4

doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [Citation.] [¶] 2. I was convicted of murder, attempted murder, or manslaughter following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder. [Citation.] [¶] 3. I could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The court found defendant's petition set forth a prima facie case for relief and issued an order to show cause. At the hearing, the court stated it had reviewed the petition pleadings, the stipulations provided to the court, defendant's police interview, the preliminary hearing, and the guilty plea. In denying the petition, the court emphasized the following facts: "[Defendant] was the driver, the sole occupant of the vehicle. She was the person who shot at least six or seven shots into a group of young males outside an apartment building. She admitted to driving around, looking for the three individuals and to being the shooter. She was very angry about whatever altercation she believed had taken place in the liquor store related to racial insults. She admitted to later on knowing what she did was wrong but claimed she was only trying to scare. [¶] I'm not sure her actions support her statements that she was trying to scare. First of all, I watched her interview, which was about an hour long. It was two weeks after the shooting. And you could see she was still very agitated and very angry from whatever occurred in that liquor store or whatever she perceived, because I think the facts are unclear based on the surveillance of what went down, leading me to believe on the date of the incident she was very angry; that, I think, at that time she harbored an intent to kill them, not just scare them. [¶] This was the second time she had been jumped at that liquor store. She was very frustrated about not being able to go to her corner store, and she was very upset about the racist comments that were said to her. You can hear her anger specifically when she's talking about — she says she pulled out a Red Bull and Moscato, I believe

5

she says, and she didn't even get a chance to pay for those and these guys came to bother her, and that anger leads into her behavior, whatever she was doing, which to this Court indicates more of an intent to kill than just scare."

The court continued: "[Defendant] drove around for a long time trying to find them. She wanted to take care of it. She had a loaded gun in her purse when she was doing it. She found them, drove by quickly, then turned around, drove by slowly, fired about five or six shots, then when one male ran away; she specifically followed after him, stopped, and shot more. That indicates to this Court that the reasonable interpretation from that evidence is that she harbored an intent to kill, not just scare. That, coupled with her plea where she admitted an intent to kill, shows this Court beyond a reasonable doubt that she would be guilty. [¶] Additionally, she acted alone. She was a [lone] shooter. She yielded the gun. Afterwards, she told her neighbor that she shot them and she, quote, Got them. She also told another neighbor that — whose daughter was also there for it and overheard it — that she needed to change her parking spots to hide her vehicle and that she, quote, Took care of the problem."

Based on its review of the above facts, the court denied the petition, finding proof beyond a reasonable doubt that defendant was guilty of attempted murder. Defendant timely filed a notice of appeal.

## DISCUSSION

Relief under section 1172.6 is restricted to those convicted of murder "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (*Id.*, subd. (a)(1).) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551 § 2) amended section 1172.6 to expand resentencing eligibility to persons convicted of attempted murder. A defendant convicted of attempted murder is eligible for relief under section 1172.6 only if

6

that conviction was based on the natural and probable consequences doctrine. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Thus, a defendant convicted of attempted murder either as an actual perpetrator or a direct aider and abettor is not eligible for relief. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204.)

The burden of proof is on the prosecution to prove beyond a reasonable doubt the defendant is ineligible for resentencing. (§ 1172.6, subd. (d)(3).) Section 1172.6, subdivision (d)(3), which governs the conduct of evidentiary hearings following an order to show cause, provides: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*Ibid.*) Preliminary hearing testimony is admissible as prior testimony, but hearsay evidence admitted via Proposition 115 (i.e., admitted under section 872, subdivision (b)) is not admissible unless an exception to the hearsay rule applies. (*Ibid.*) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid.*)

To determine if a trial court properly denied a section 1172.6 petition after an evidentiary hearing, "'""we review the factual findings for substantial evidence and the application of those facts to the statute de novo.'"'" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.)

Here, defendant's counsel stipulated to the Proposition 115 preliminary hearing transcript and a factual summary submitted by the parties to the court. Based on the evidence, defendant was the only involved participant in this case. She was the sole occupant of the vehicle and the person who shot numerous times into a group of males. Defendant also admitted to looking for the group of males, following them, and to being the shooter. After the shooting, she told her apartment manager she "shot them" and "got them" and similarly told a neighbor she "took care of the problem." Recovered rounds

7

were not low to the ground or consistent with firing downward.  Instead, a detective observed a bullet strike approximately five feet off the ground.  In her guilty plea, defendant further admitted to personally using a firearm with the intent to kill.  Based on these facts, it cannot be said defendant was not the actual perpetrator or acted without the intent to kill.  We find the trial court's ruling is supported by substantial evidence.

## DISPOSITION

The postjudgment order is affirmed.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.


8